## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| **RECKITT BENCKISER, INC.** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 09-445 (ESH)** |
| ) | |
| **LISA P. JACKSON,** ) | |
| **ADMINISTRATOR, UNITED STATES** ) | |
| **ENVIRONMENTAL PROTECTION** ) | |
| **AGENCY, ET AL.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____) | |

### MEMORANDUM OPINION

Plaintiff Reckitt Benckiser, Inc. ("Reckitt"), a manufacturer of consumer-use rodenticides, brings this action against the United States Environmental Protection Agency ("EPA") and Lisa P. Jackson, the EPA's Administrator, to challenge the EPA's failure to initiate cancellations proceedings against certain Reckitt products under the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 *et seq*.  Reckitt alleges that the EPA should have commenced such proceedings once the EPA determined, under Section 4 of FIFRA, 7 U.S.C. § 136a-1, that those products would not be eligible for reregistration.  Reckitt seeks an order directing the EPA to commence such proceedings and enjoining the EPA from taking any enforcement action against Reckitt prior to their completion.  Defendants have moved  to dismiss for lack of subject matter jurisdiction, *see* Fed. R. Civ. P. 12(b)(1), and for failure to state a claim.  *See* Fed. R. Civ. P. 12(b)(6).   For the reasons stated herein, the Court will grant the motion to dismiss.

## BACKGROUND

### I.   FIFRA'S STATUTORY FRAMEWORK

#### A.   Registration (7 U.S.C. § 136a)

FIFRA requires that all pesticide products sold or distributed in the United States be

registered with the EPA.  7 U.S.C. § 136a(1).  The EPA is directed to approve the registration of

a pesticide if "(A) its composition is such as to warrant the proposed claims for it; (B) its labeling

and other material required to be submitted comply with the requirements of this subchapter; (C)

it will perform its intended function without unreasonable adverse effects on the environment;

and (D) when used in accordance with widespread and commonly recognized practice it will not

generally cause unreasonable adverse effects on the environment."  7 U.S.C. § 136a(c)(5).

#### B.   Cancellation of Registered Pesticides (7 U.S.C. § 136d)

FIFRA also provides for the "cancellation" or "change in classification" of registered

pesticides under certain circumstances.  7 U.S.C. § 136d.  Specifically, it provides that:

> If it appears to the Administrator that a pesticide or its labeling or other material
> required to be submitted does not comply with the provisions of this subchapter
> or, when used in accordance with widespread and commonly recognized practice,
> generally causes unreasonable adverse effects on the environment, the
> Administrator may issue a notice of the Administrator's intent either--
>
> > (1) to cancel its registration or to change its classification together
> > with the reasons (including the factual basis) for the
> > Administrator's action, or
> >
> > (2) to hold a hearing to determine whether or not its registration
> > should be canceled or its classification changed.
>
> Such notice shall be sent to the registrant and made public. . . .  The proposed
> action shall become final and effective at the end of 30 days from receipt by the
> registrant, or publication, of a notice issued under paragraph (1), whichever occurs
> later, unless within that time either (i) the registrant makes the necessary

2

corrections, if possible, or (ii) a request for a hearing is made by a person
adversely affected by the notice.  In the event a hearing is held pursuant to such a
request or to the Administrator's determination under paragraph (2), a decision
pertaining to registration or classification issued after completion of such hearing
shall be final.  In taking any final action under this subsection, the Administrator
shall consider restricting a pesticide's use or uses as an alternative to cancellation
and shall fully explain the reasons for these restrictions, and shall include among
those factors to be taken into account the impact of such final action on
production and prices of agricultural commodities, retail food prices, and
otherwise on the agricultural economy, and the Administrator shall publish in the
Federal Register an analysis of such impact.

7 U.S.C. § 136d.

C.     **Reregistration Review Process (7 U.S.C. § 136a-1)**

FIFRA also requires the EPA to determine whether a registered pesticide will be eligible

for reregistration.  *See* 7 U.S.C. § 136a-1.  Section 136a-1 establishes a five-phase process for

reregistration of a registered pesticide.  7 U.S.C. § 136a-1(b)-(g).  The fifth phase, subsection

(g),[1] "includes the review by the Administrator . . . of data submitted for reregistration and

appropriate regulatory action by the Administrator."  *Id.* § 136a-1(b).  If the pesticide continues

to meet the requirements of 7 U.S.C. § 136a(c)(5) (the requirements for registration), then the

pesticide is eligible to be reregistered, and the EPA is directed to reregister it.  *Id.* § 136a-

1(g)(2)(C).  If the EPA determines that a pesticide is not eligible for reregistration, subsection

(g) provides that "the Administrator shall take appropriate regulatory action . . . as expeditiously

as possible."  7 U.S.C. § 136a-1(g)(2)(D).

II.     **FACTUAL BACKGROUND**

A.     **EPA's Risk Mitigation Decision for Ten Rodenticides**

---

[1]The first four phases of the reregistration process, subsections 136(c)-(f), are not relevant
to this case.

Since the 1990s, as part of the reregistration process under FIFRA, the EPA has been reviewing the safety and efficacy of various rodenticide products.  (Compl. ¶ 22.)  On May 28, 2008, it issued a "Risk Mitigation Decision for Ten Rodenticides" ("RMD").  (*Id.*, Ex. 1.)  The RMD concludes that currently registered products containing any of ten identified rodenticides are not eligible for reregistration unless the registrant implements certain "risk mitigation measures."  (*Id.*, Ex. 1, at 25.)

On June 18, 2008, the EPA sent a letter to manufacturers whose registered products contained any of the ten rodenticides covered by the RMD.  (*Id.*, Ex. 2, at 1.)  In the letter, the EPA advised registrants that  "all products that do not currently comply with the new requirements must either be amended or cancelled."  (*Id.*, Ex. 2, at 2.)  Registrants were directed to respond to the EPA by September 2, 2008 (the "90-day response"), "declaring an intent to comply or not comply with the risk mitigation measures" in the RMD.  (*Id.*, Ex. 2, at 2-3.)  Registrants who intended to comply with the RMD were given until December 4, 2009, to submit applications to file amendment applications.  (*Id.*)  Registrants who did not intend to comply were directed to "submit a request for voluntary cancellation" along with their 90-day response.  (*Id.*)  The RMD set June 4, 2011, as the date by which any voluntary cancellation "must be effective" and as the "last day for registrants to 'release for shipment' (sell or distribute) rodenticide products not complying with the May 2008 [RMD]."  (*Id.*)  After that date, the EPA advised that "rodenticide products that do not comply with the [RMD] . . . would be considered misbranded."  (*Id.*, Ex. 2, at 2.)

The EPA's letter also advised registrants that "failure to make such a voluntary cancellation request will result in additional regulatory action."  (*Id.*, Ex. 2, at 4.)  Specifically,

the EPA told registrants that it "will review the 90-Day Responses, and will initiate cancellation

actions against products for which it does not receive notification of the registrant's intent to

comply with the risk mitigation measures."  (*Id.*, Ex. 2, at 5.)

### B.      Reckitt's Rodenticides

By letter dated August 28, 2008, Reckitt submitted its "90-Day Response" to the RMD.

(*Id.*, Ex. 4.)  Reckitt stated therein its "intent not to comply with the Risk Mitigation Decision."

Attached to its letter was the 90-Day Response Form that had been provided by the EPA.  For

each of its affected registered products (thirteen in all), Reckitt checked the box marked "I do not

intend to voluntarily bring this product into compliance with the requirements of the May 2008

risk mitigation decision.  I understand that EPA may pursue additional regulatory action,

including cancellation."  (*Id.*, Ex. 4, at 2-4.)

On November 21, 2008, Reckitt's counsel sent a letter to the EPA referencing an

upcoming meeting scheduled between the EPA and Reckitt.  (*Id.*, Ex. 5).  In the letter, Reckitt

states its belief that "the first order of business during our meeting should be to discuss how EPA

and Reckitt Benckiser can expeditiously commence the administrative process, including when

EPA expects to issue a Notice of Intent to Cancel the registrations for Reckitt Benckiser's

rodenticide products that are affected by the RMD."  (*Id.*)  On January 9, 2009, Reckitt's counsel

sent a second letter to the EPA to "confirm parts of our discussion" at the December 3, 2008,

meeting.  (*Id.*, Ex. 6, at 1.)  According to that letter, at the December 3, 2008, meeting, Reckitt

had requested that the EPA "expeditiously commence the administrative process," but was

"advised" that the EPA "could not provide a specific timeframe within which it would

commence the administrative process.  (*Id.*)  On February 3, February 26, and March 5, 2009, the

EPA orally confirmed to Reckitt's counsel that EPA had no plans to initiate cancellation

proceedings. (Compl. ¶ 53.)

## III.   PROCEDURAL HISTORY

On March 6, 2009, Reckitt filed the pending action to challenge the EPA's refusal to

commence cancellation proceedings for Reckitt's affected products and to obtain an order

requiring the EPA to commence such proceedings.  Reckitt contends that it is entitled to relief

under FIFRA (Count I), the Adminstrative Procedures Act ("APA") (Count II),  and/or the

Mandamus Act (Count III).   Defendants have moved to dismiss plaintiff's FIFRA and APA

claims for lack of subject matter jurisdiction and its mandamus claim for failure to state a claim.

*See* Fed. R. Civ. P. 12(b)(1) & (6).  For the following reasons, the Court will grant defendants'

motion to dismiss.

## ANALYSIS

## I.   SUBJECT MATTER JURISDICTION

### A.   Legal Standard

On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1),

plaintiff bears the burden of establishing by a preponderance of the evidence that the court has

subject matter jurisdiction. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  A

court must accept as true all factual allegations in the complaint and give plaintiff the benefit of

all reasonable inferences from the facts alleged.  *Sparrow v. United Air Lines, Inc*., 216 F.3d

1111, 1114 (D.C. Cir. 2000).  A court may dismiss a complaint for lack of subject matter

jurisdiction only if "it appears beyond doubt that the plaintiff can prove no set of facts in support

of his claim which would entitle him to relief."  *Richardson v. United States*, 193 F.3d 545, 549

(D.C.Cir.1999) (quoting *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1086 (D.C.Cir.1998)).

### B.      FIFRA

Defendants first argue that plaintiff's FIFRA claim must be dismissed for lack of subject matter jurisdiction because, to the extent plaintiff has a reviewable claim, the judicial review provision within the reregistration section of FIFRA, 7 U.S.C. 136a-1(m), gives exclusive jurisdiction to the court of appeals.  Plaintiff responds that the general provisions for judicial review under FIFRA, 7 U.S.C. § 136n, apply, and that under those provisions, its claim belongs in the district court.   Which of these jurisdictional provisions applies to a claim such as plaintiff's appears to be a matter of first impression.  As explained herein, the Court agrees with the defendant that section 136a-1(m) applies and that the court of appeals, therefore, has exclusive jurisdiction over plaintiff's claim.

### 1.      FIFRA's Jurisdictional Provisions

### a.      7 U.S.C § 136n

The general framework for judicial review of agency action under FIFRA provides for district court review under certain circumstances and review by the court of appeals in others. *See* 7 U.S.C. § 136n(a) & (b).  Section 136n(a) defines the parameters of district court review:

> Except as otherwise provided in this subchapter, the refusal of the Administrator to cancel or suspend a registration or to change a classification not following a hearing and other final actions of the Administrator not committed to the discretion of the Administrator by law are judicially reviewable by the district courts of the United States.

*Id.* § 136n(a).  Section 136n(b), entitled "[r]eview by the court of appeals," provides that:

> In the case of actual controversy as to the validity of any order issued by the

Administrator following a public hearing, any person who will be adversely affected by such order and who had been a party to the proceedings may obtain judicial review by filing in the United States court of appeals for the circuit wherein such person resides or has a place of business, within 60 days after the entry of such order, a petition praying that the order be set aside in whole or in part. . . .  Upon the filing of such petition the court shall have exclusive jurisdiction to affirm or set aside the order complained of in whole or in part. . . .

*Id.* § 136n(b).

### b.      7 U.S.C. § 136a-1(m)

As described above,  FIFRA section 136a-1 establishes certain procedures that the EPA must follow before it reregisters a pesticide.  *See* 7 U.S.C. § 136a-1(b)-(g).  Within that section, subsection 136a-1(m), entitled "Judicial review," provides that "Any failure of the Administrator to take any action required by this section shall be subject to judicial review under the procedures prescribed by section 136n(b) of this title."  7 U.S.C. § 136a-1(m) (emphasis added).  Section 136n(b), *see supra*, is the subsection within the general jurisdictional section pertaining to review by an appellate court.

### 2.      Section 136a-1(m) Applies

Defendants' argument that section 136a-1(m) applies starts from the premise that a cancellation proceeding under 7 U.S.C. § 136d is "only one of several 'appropriate regulatory action[s]' that EPA may choose from in phase 5 of the reregistration process once the Agency determines that a pesticide should not be reregistered."  (Defs. Mem. in Support of Mot. to Dismiss at 13 (quoting 7 U.S.C. § 136a-1(g)(2)(D)).  Thus, they argue, plaintiff's claim that the EPA should have initiated cancellation proceedings against Reckitt's products is in essence a claim that the EPA has failed "to take appropriate regulatory action . . . as expeditiously as possible," as required by  the fifth phase of the reregistration process.  See 7 U.S.C. §

8

136a-1(g)(2)(D).  As section 136a-1(m) commits the review of any claim concerning the "failure

of the Administrator to take *any action required by* [section 136a-1]" to the court of appeals, 7

U.S.C. § 136a-1(m) (emphasis added), defendants contend that the "plain language" of the statute

establishes that it applies to a claim that the EPA failed to take appropriate regulatory action

under section 136a-1(g)(2)(D).

     Plaintiff starts from a different premise.  It takes the position that "once the collection

and review of data are completed, and once a decision is reached as to which products qualify for

reregistration, then the [section 136a-1] phases have been completed."  (Pl. Mem. at 30.)

Relying on this premise, plaintiff asserts that its challenge to the EPA's failure to initiate

cancellation proceedings is solely a claim that the EPA has failed to take action required by

section 136d, independent of and completely separable from the EPA's duty to carry out

reregistration reviews under section 136a-1.  Accordingly, plaintiffs contend that section 136a-

1(m) simply does not apply to its claim.  Plaintiff contends that its interpretation of section 136a-

1(m) "makes sense" because "Congress placed EPA on a tight schedule" for reregistration

reviews, making the expedited review provided for by section 136a-1(m) necessary in cases

where plaintiffs are alleging "a delay . . . . under the various deadlines established by Congress."

     Given the parties' positions, the Court must first decide whether the EPA's failure to

initiate cancellations proceedings against plaintiff's products is a failure to take "appropriate

regulatory action" as required by section 136a-1(g)(2)(D).  If it is, as defendants argue, then

section 136a-1 applies and the court of appeals has exclusive jurisdiction of plaintiff's claim.  If

it is not, as plaintiff argues, section 136a-1 does not apply and whether subject matter jurisdiction

exists must be determined with reference to the general jurisdictional provisions in section 136n.

"In matters of statutory construction, the text is [the court's] primary guide." *See Mayer Brown LLP v. I.R.S.*, 562 F.3d 1190 (D.C. Cir. 2009) (citing *Sierra Club v. EPA*, 536 F.3d 673, 679 (D.C.Cir.2008)).  Here, the text supports the defendant's position that the failure to initiate cancellation proceedings is a failure to take appropriate regulatory action under section 136a-1(g)(2)(D).  Section 136a-1(g) describes what the EPA is required to do as part of phase five of the reregistration review.  It provides that once the EPA determines that a pesticide is not eligible to be reregistered, it  "shall take appropriate regulatory action . . . as expeditiously as possible."  7 U.S.C. § 136a-1(g)(2)(D)(2)(D); *see also* 7 U.S.C. § 136a-1(b) (describing subsection (g) as "includ[ing] the review by the Administrator . . . of data submitted for reregistration and appropriate regulatory action by the Administrator.").  Thus, the plain language of the statute expressly includes "appropriate regulatory action" as part of phase five.  Moreover, "[i]t is [a court's] duty to give effect, if possible, to every clause and word of a statute." *Sierra Club*, 536 F.3d at 680 (quoting *United States v. Menasche*, 348 U.S. 528, 538-39 (1955)).  Plaintiff's suggestion that all of the actions "required by" section 136a-1 are completed once the EPA has completed its review and made its determination as to a pesticide's eligibility for reregistration would read the requirement to take appropriate regulatory action out of the statute entirely.

In addition, although the term "appropriate regulatory action" is not defined in FIFRA, the legislative history of the statute supports defendant's contention that "appropriate regulatory action" includes initiating a cancellation proceeding.  In describing the purpose and effect of amending FIFRA to add section 136a-1, the House Report states that:

> Following completion of the required independent review by the Administrator of registrants' submissions of data and information under the reregistration program, the Administrator must reregister the pesticide products or promptly take other

appropriate regulatory action under FIFRA, *such as canceling*, suspending, or restricting the pesticide, or imposing label changes."

H.R. Rep. 100-939, 1988 U.S.C.C.A.N. 3474, 1988 WL 169884 (1988) (emphasis added).

Accordingly, the Court concludes that an allegation that the EPA has violated FIFRA by failing to initiate a cancellation proceeding following a determination that a pesticide is ineligible for reregistration is an allegation that the EPA has failed to take appropriate regulatory action under section 136a-1(g)(2)(D).  As section 136a-1(m) states that judicial review lies in the court of appeals over "*Any failure* of the Administrator to take *any action required by* [section 136a-1]," 7 U.S.C. § 136a-1(m) (emphasis added), it necessarily follows that this Court lacks subject matter jurisdiction over plaintiff's claim.  Accordingly, plaintiff's FIFRA claim will be dismissed for lack of subject matter jurisdiction.[2]

### 3.    Other Grounds for Dismissal

Having concluded that plaintiff's FIFRA claim must be dismissed because jurisdiction lies with the Circuit Court, it is not necessary to address the EPA's alternative arguments for dismissal: (1) that the EPA's failure to initiate cancellation proceedings is an unreviewable discretionary act; and/or (2) that plaintiff's claim is not ripe for review because the EPA has taken no final agency action with regard to plaintiff's decision not to adopt the risk mitigation measures described in the RMD.

### C.    APA Claim

The plaintiff's APA claim will also be dismissed for lack of jurisdiction because, as plaintiff concedes, the APA does not provide a court with jurisdiction but rather "is read as a part

---

[2]Plaintiff does not suggest that if section 136a-1(m) applies its application could be overridden by the general jurisdictional provisions in section 136n.

11

of FIFRA and provides the contour of the court's review."  (Pl. Mem. at 36 (internal quotations omitted).)

## II.   MANDAMUS

The extraordinary writ of mandamus is available "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. The writ of mandamus is "a drastic and extraordinary remedy reserved for really extraordinary causes." *Cheney v. United States Dist. Court*, 542 U.S. 367, 380 (2004) (internal quotations and citation omitted); *accord Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980). Mandamus relief is available only if "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff." *In re Medicare Reimbursement Litig.*, 414 F.3d 7, 10 (D.C.Cir.2005) (citations omitted).  The duty to be compelled must be nondiscretionary. *Pittston Coal Group v. Sebben*, 488 U.S. 105, 121 (1988). Moreover, a writ of mandamus may issue only where "the duty to be performed is ministerial and the obligation to act peremptory, and clearly defined.  The law must not only authorize the demanded action, but require it; the duty must be clear and undisputable." *Shoshone Bannock Tribes v. Reno*, 56 F.3d 1476, 1480 (D.C.Cir.1995).

Reckitt has not established a right to mandamus.  At this point, it is far from "clear" that it has a right to relief or that the defendant has a duty to act.  And it is the Circuit Court, not this Court, that has jurisdiction to make those determinations.  Moreover, plaintiff cannot establish that there is "no other adequate remedy available" as it has not yet sought relief from the Circuit Court.  Accordingly, plaintiff's mandamus claim will be dismissed.

**CONCLUSION**

For the foregoing reasons, the Court will GRANT defendants' motion to dismiss.

Plaintiff's complaint is dismissed with prejudice. A separate Order accompanies this

Memorandum Opinion.


_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge

Date:   October 30, 2009